AB:JRS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

RYAN SMALLING,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

AFFIDAVIT AND COMPLAINT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT

Case No. 19-MJ-744

(21 U.S.C. § 963)

EASTERN DISTRICT OF NEW YORK, SS:

       ANGEL MARTINEZ, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

       On or about June 7, 2019, within the Eastern District of New York and elsewhere, the defendant RYAN SMALLING, together with others, did knowingly and intentionally conspire to import into the United States from a place outside thereof 500 grams or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 952(a) and 960(b)(2)(B).

       (Title 21, United States Code, Section 963)

       The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") and have been one year. Prior to joining HSI I worked as an officer with Customs and Border Protection ("CBP") for ten years. I have been involved in the investigation of numerous cases involving narcotics distribution conspiracies involving airport and airline employees. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation.

2. On or about June 7, 2019, a brown, soft-sided roller bag with a purple bandana tied around the handles (the "Bag") arrived at John F. Kennedy International Airport ("JFK Airport") located in Queens, New York, aboard Caribbean Airlines Flight BW 11 from Sangster Airport located in Montego Bay, Jamaica ("Flight BW 11"). The Bag arrived at the baggage pick-up carousel in Customs, but no one claimed the Bag.

3. The baggage claim tag on the Bag listed the name of a woman who had traveled on Flight BW 11 ("Individual-1"). After Flight BW 11 landed, Individual-1 came to the baggage claim desk and stated that her bag had been lost. When shown the Bag, Individual-1 stated that the Bag was not hers. Individual-1 further stated that she had seen her actual luggage tagged with the baggage claim tag and that she did not know how or why her baggage claim tag had come to be on the Bag. Later that night, Individual-1's actual luggage was found — although it did not have a baggage claim tag, it had traveled on Flight BW 11 from Jamaica to New York.

4. On or about June 8, 2019, Customs and Border Protection ("CBP") officers inspected the Bag. Upon the inspection of the Bag, CBP officers smelled a

chemical odor permeating from the Bag. CBP officers opened the Bag and discovered three brick-shaped objects, sealed in plastic. CBP officers probed the objects and discovered a white powdery substance that field-tested positive for cocaine. The gross weight of the objects seized from the Bag was 3.519 kilograms.

5. Based on my training and experience, these facts indicate to me that the Bag was part of a narcotics importation conspiracy involving airport or airline employees.

6. First, it is common in such conspiracies to mark the baggage containing drugs with an easily distinguishing feature, such as a purple bandana. When drugs are imported by a courier, the courier normally would have seen the baggage before boarding the plane and would be able to recognize the baggage when it came off the plane. In conspiracies involving airport or airline employees, however, the co-conspirator responsible for intercepting the baggage often has never seen the baggage before and cannot reasonably identify it without an obvious marking.

7. Second, normally, only airport and airline employees have access to checked baggage after it is checked and would have been able to remove the baggage claim tag from Individual-1's luggage and place it on the Bag. In addition, the fact that Individual-1's actual luggage made it onto the flight without a baggage claim tag suggests that the switch occurred fairly late in the loading process.

8. Third, the fact that the Bag arrived at the baggage pick-up carousel in Customs and was not claimed by anyone suggests that something went wrong in the importation scheme. While it is possible that an arriving passenger was supposed to pick up the Bag and failed to do so, it is more likely that an airline or airport employee failed to

intercept the Bag before it entered the Customs area.[2] Employees in such schemes have a limited window in which to intercept the baggage containing narcotics — generally, the baggage must be intercepted as it comes off the plane or as it is being loaded onto the conveyor belt to Customs, since it is often too late to safely intercept the bag once it has gone into Customs.

9. On or about June 8, 2019, HSI agents received from CBP officers surveillance footage of the loading of baggage onto a conveyor belt within a belt room in an employees-only, secure area within JFK Airport. The surveillance footage depicts the defendant RYAN SMALLING, a Swissport airport employee, enter the belt room on June 7, 2019, at approximately 10:37 p.m., just after other Swissport employees began loading the checked bags from Flight BW 11 onto the conveyor belt.

10. The surveillance footage depicts the defendant RYAN SMALLING speaking on a cellular telephone while entering the belt room. Seconds after the defendant arrived, while the defendant was still on the phone and had his back to the conveyor belt, the Bag was unloaded onto the conveyor belt, with the purple bandana facing away from the defendant.

11. After the Bag passed him by, the defendant paced alongside the belt, watching the baggage as it was unloaded onto the belt and occasionally lifting up soft-sided luggage and examining it more closely. The defendant did not assist unloading any bags,

---

[2] Because the baggage pick-up carousel is accessible only to arriving passengers and airport or airline employees, it is not plausible that someone would come from outside the airport to pick up the luggage.

5

although he did help straighten some crooked luggage blocking the belt, and he often appears to be in the other employees' way.

12. As soon as the last baggage was unloaded, the defendant promptly left while the other employees who had been unloading the luggage stayed behind.

13. Based on these facts, as well as my training and experience, I believe that the defendant was searching for the Bag and was on the phone with a co-conspirator to receive a description of the Bag.

14. HSI officers obtained toll records for the defendant's cellular telephone. The defendant had listed the number for his cellular telephone on a Port Authority application to obtain access to JFK Airport, as well as on a CBP form to obtain access to international baggage areas. Information obtained from the defendant's cellular telephone carrier confirmed that the defendant is the subscriber to the cellular telephone number listed on the above-mentioned applications.

15. The defendant's cellular telephone records revealed that at approximately 10:36 p.m. on or about June 7, 2019, the defendant called an individual ("Individual-2"). The call lasted for approximately two minutes and six seconds. The defendant was speaking to Individual-2 throughout his entry into the belt room and his initial search of the bags being loaded onto the conveyor belt, as described above.

16. According to CBP records, Individual-2 had flown to Jamaica in May 2019 and did not return until July 2019. In other words, Individual-2 was in Jamaica at the time the Bag was sent from Jamaica to New York and while he was on the phone with the defendant.

17.     The defendant and Individual-2 called each other approximately four other times on or about the night of June 7, 2019 and on or about June 8, 2019, and spoke for a total of approximately nine-and-a-half minutes.  In addition, they contacted each other approximately 14 times in the month before the Bag was sent to the United States, with an approximately equal number of calls from Individual-2 to the defendant and calls from the defendant to Individual-2.  But following the seizure of the Bag, Individual-2 did not call the defendant again, and the defendant called Individual-2 once on or about June 24, 2019 and once on or about July 4, 2019 and spoke for less than a minute each time.  There were no other telephone contacts between the two from approximately June 9, 2019 to July 25, 2019 (the end of the period of call records collected).

18.     Based on these facts, as well as my training and experience, I believe that there is probable cause that the defendant and Individual-2 were part of a conspiracy to import cocaine and that the defendant had been responsible for intercepting the Bag but narrowly missed it, leading to its ultimate discovery by CBP.

## REQUEST FOR SEALING

19.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and arrest warrant, as disclosure would give the target of the investigation an opportunity to destroy evidence, harm or threaten witnesses, change patterns of behavior, notify confederates and flee from or evade prosecution and therefore have a significant and

negative impact on the continuing investigation and may severely jeopardize its effectiveness.

WHEREFORE, your deponent respectfully requests an arrest warrant for the defendant RYAN SMLLING so that he may be dealt with according to law.

*A. Martinez*
ANGEL MARTINEZ
Special Agent, United States Department of Homeland Security, Homeland Security Investigations

Sworn to before me this
21th day of August, 2019

s/ Tiscione

THE HONORABL
UNITED STATES
EASTERN DISTR